Welcome back, Mr. Miller. May it please the Court, good morning again. My name is Darren Miller and I represent Vincent Barrios on this matter. Your Honors, after a trial by jury, Mr. Barrios was convicted of various offenses, three counts of which were related to a real person, YF, and a fictitious minor named Stella. I'd first like to start, I'm sorry, we would also ask that this Court reverse the convictions for what should be count three and five, which would be enticement of a minor and receipt of child pornography regarding YF, which is the real minor. Reverse the convictions and remand for new trial as an alternative, and as a third alternative, remand for resentencing. I'd like to get into the reasonable doubt argument. For count three, enticement of a minor, the government was required to prove that Mr. Barrios believed YF was younger than 18. For count five, receipt of child pornography, the government was required that Barrios knew that the visual depictions were of a minor. The government failed to prove this beyond sufficiency of evidence was inadequate. What about the comment about don't or won't tell your mom or mother? That's not something that's commonly said to an adult. Yeah, I understand in general, Your Honor, but I think if you look at the dynamics here, Mr. Barrios was friends with the victim's mother, with YF's mother, and that was regarding sending images. So it wasn't just some out-of-the-blue comment to a stranger, I won't tell your mom. It was, I won't tell your mom who's my friend. And 18, 19, any age, I don't think would be super thrilled with their mom knowing that they're sending sexual images of themselves to the parent's friend. So I don't think that that really proves anything as far as knowledge of age. When you look at the conversations, the messages between the two of them, there was no discussion of age whatsoever. And the content of the messages, if you're to look at them, they're not about the types of things you'd expect minors to be talking about. There's, for example, there's no discussion of a curfew. There's no discussion of classes or teachers or school dances or after-school activities or clubs or homework. None of these types of issues were discussed. In fact, the talk was more, I guess, say adult talk because there was discussion of them engaging in smoking cannabis together. So the nature of the conversation is no indication to Mr. Barrios that YF was a minor. And also, YF's appearance, Detective Almeida testified that YF was wearing makeup in the pictures. I have seen the pictures, and indeed, she was wearing makeup. There is nothing about the pictures. This is a 14-year-old, almost 15, I believe, at the time. People look different ages, and she certainly, at least in my mind, could have passed for an 18-year-old. And certainly, no reasonable juror could find, based on looking at those pictures, that my client knew that she was a minor. Well, wasn't the major evidence his familiarity with the family and being around her as a young child? Yeah, there was some of that, Your Honor. But again, these are not people who routinely hung out together. I believe that was over a 10-year period of three or four interactions. So it's not — I'm sure, as Your Honors know, we all know people, and we all know they have kids. Maybe we met them one time, but we don't necessarily keep track of how old they are when we met them. And in fact, there's no evidence that Mr. Byros has even told at any time, be it even 10 years ago, how old YF was. So there wasn't even really a kind of a base level to even make that judgment. Given the limited time, I think I wanted to jump into the improper sentencing factor next, if that's okay. Our position is that the court gave significant weight to an improper factor, and that was that Mr. Byros exercised his right to trial. Now, the government argued that the victim experienced trauma by being put through the trial, which, by the way, this judge, the sentencing judge, was not the trial judge. She did review and listen to the trial, but she was not actually there to see the witness testify. And if I could read the quote of what the judge stated, you have the right to have a jury decide whether you're guilty or not, but it's fair for the court to also consider the trauma that places on the victim. As we cited under Thompson in North Carolina v. Pierce, the defendant may not be punished for exercising his right to a trial, and that is clearly, I think, what that statement indicates. The court says it's fair to consider the trauma that going to trial places on the victim. Is there a difference between a defendant being punished and the denial of leniency? And if so, which side of the line does this one fall on? Yes, Your Honor, that's, I think, a tricky line. But I do think that here, the court did not say, oh, well, had you not gone to trial, I would have given you some leniency. This is the court specifically saying that because you opted to go to trial, that put trauma on the victim. And that was something that the court asked, I'm sorry, the government asked to consider. In fact, if you look at what the government argued, it stated not accepting responsibility is a difference between 30 years and a life sentence. So that ties right into what the court stated, that the trauma of going to trial, it could consider and did consider, and the government itself argued that that's a difference between 30 years and life. That's a difference between the 30 years the defense was seeking and the life sentence that the government was seeking. What's the difference between, or do you think this case represents a difference between the trauma that the victim goes through in testifying at the trial versus just being able to observe? And I understand your point, this wasn't the actual district court judge, but being able to see in live form the trauma that resulted from the conduct of the defendant. I'm not sure I totally understand, but I think... Well, if you go to trial and you hear, and the district court and the jury hears in full form, full detail, the conduct that's being alleged, you can hear and feel that trauma, versus the additional trauma or the separate trauma or the type of trauma that one gets simply for testifying. Do you see that difference? I think so. Well, I think that isn't it sometimes when you're advising a client on whether to go to trial or take a plea. If you go to trial, quite often there's a lot more testimony that comes out that will be presented to the district court. And if you're convicted, that could be part of sentencing. So sometimes the trial kind of unearths more evidence. In this case, it sort of puts on display in three dimensions the conduct versus a written plea agreement where it's on its words. But then there's the additional trauma, perhaps, and I don't know if this is what you're getting at, the additional trauma of actually having to relive it through the trial. Does that make sense now? Yeah, I think that was kind of our point, that it was a trauma that the court relied... The court essentially was saying, hey, you put this victim through the nightmare of a trial. That caused trauma. I don't think she was referring to trauma of the conduct itself. No, I think that it was referring to the trauma of having to go testify. I'm pretty much expired on my time. Your Honors, we'd ask that this court reverse and remand, reverse the convictions for counts three and five, reverse and remand for new trial, and alternatively remand for new sentencing hearing. Thank you. Counsel, just for your preparation, if you think you could use it, we'll give you a minute after. Okay, thank you very much. I appreciate that. Ms. Ridge. Good morning. May it please the Court, Counsel. My name is Catherine Ridge from the District of South Dakota, representing the United States today. I'll start where the defense left off, on issue three. The district court did not abuse its discretion in the sentence here. In the sentencing hearing, when the transcript was reviewed in full, defense counsel, in the arguments to the district court, initially brought up and invited the comparison for why Mr. Barrios should receive a lesser sentence below the guidelines, and attempted to make comparisons to other cases, including the rally, Sturgis rally sex sting cases that are so frequently seen in the Western Division. So the defendant raises this issue of comparing Mr. Barrios to others who are caught up in that sting. And the prosecutor responded to those arguments when it was the United States' turn, and so that was at pages four and then six. So that kind of started that effort. When the district court then was examining the 3553A factors, the quote that Mr. Miller read, where the district court noted the trauma of the victim having to testify, was the only time in the sentencing, the only time the district court mentioned that. It was just one part of the comments. Do you think that that's an appropriate factor? I think it is one factor, yes, because it went to the district. It went to the broader comments of the district court in that the district court was seeing also his treatment of her in the text, discussing the text messages, how Mr. Barrios treated her. That's different, though, isn't it? Maybe that gets to the point I was inartfully trying to make with Mr. Miller, which is there's a difference between the trauma of the conduct and seeing that play out at the trial versus the trauma that is replayed in the testimony and having to testify about it. That latter seems to be attached to your right to a trial, does it not? Are you saying that you don't think that is correct? I can see the point, that there could be situations. Here, though, I think it was such a small – if it was considered by the district court in that way, it was such a small part. So you're saying it was improper, but it was not a significant factor? We're not conceding that it was improper because I think that is a consequence of the defendant's choice. And just like they're not free from the consequence of not getting acceptance of responsibility if I decide I didn't go to trial, they're also not free from the district court getting to consider – I mean – But isn't there a difference between the whole leniency and denial of leniency involved with the plea and the right to trial with this, which seems to come close to punishment for – or consideration in reaching punishment of the exercise of a constitutional right? I'm just not aware of any case law that – why it should be treated different than the consequences of going to trial and not receiving acceptance of responsibility points. So we're not prepared to concede that it's an improper factor. And in this case in particular, the district court, as I said, only mentioned it once and discussed the nature of the chats with YF and also Stella, his conduct on pretrial release, the fact that it was a real victim involved, that his total offense level was actually 50 and had to be reduced down to 43 based on capping out, and that Mr. Barrios had been in a position of trust. So the argument about the comparison by defense counsel related to these Sturgis cases that come up all the time, was that – was there a discussion of, well, those people generally don't meet their victims, those people don't – I don't remember from the record – those people generally just plead out and accept responsibility? Was this – was there that sort of argument being made to the district court that Judge Schreier was responding to and saying, no, this is a different sort of case altogether for the following reasons, or not? Yes. Yes, there was. That was part of the sentencing discussion by the parties and then the district court responding to that. I think at one point Judge Schreier noted that in the Sting case, pure Sting cases, you know, she said something along the lines of, I've often wondered if the person would actually follow through with it, and we don't always know, but here we do know. I do know, because we have this – the real victim here that we found through the Sting. So that, in her mind, she explicitly stated, removed it from – it made it more egregious than the typical Sting cases. Even if it was an improper factor, which we're not conceding any weight given, our position is that it doesn't change how the district court balanced all of the 3553A factors here. This case is very similar to the Wilcox case, where this court said that a court – a district court may grant or withhold leniency. In Frye, this court said that the other danger of exercising a constitutional right is that the sentencing court will have a lot more information when they get to that sentencing phase. Here, I don't believe that there's any relevance that the trial judge was different than the sentencing judge. The district court listened to the whole trial, so had the ability to hear voice inflections and that sort of thing, different than reading a transcript, and reviewed all of the evidence. YF and her family were present at sentencing, so she had the opportunity to observe her and the family. So I don't believe that should have any bearing on the weight that the district court could give. Turning next, then, to Issue 1, there was sufficient evidence for the jury to find here that Mr. Barrios knew that YF was a minor, in support of those elements on Counts 3 and 5. YF was only 15 years old by the time they even got to trial, so she is still – by the time they're in trial, she's still three years away from being an adult. So this was not a close 17-and-a-half-year-old person sitting at the witness stand. This was – she was still three years away. And although there was not clear at what age she was, both YF and her mother testified she was young, like having just started school or almost to start school, the first time she met Mr. Barrios. Then he knew the family well enough to have stayed with them a few days at some point, knew a nickname used by her, and was clearly in this – in a position of being able to contact her without her wondering who this person was. He knew her well enough to know that. In Lundendito case, this court said that prosecutors can use circumstantial evidence to prove this information, and that's what was done here. I think the fact that – was there something else other than what you've described to give an indication of her age? Yes, Your Honor. We also have here the messages that Mr. Barrios had with YF, the messages that Mr. Barrios had with her mother. I think, Judge Corbis, you brought it up. There's a comment along the lines of, I won't tell your mother. What would she think? I won't tell your mom. And then there was also where he – Mr. Barrios questioned the mother about if she would be mad, if he had sexual interactions with her daughter. How would you know? To which she responded, yes. And so we have those messages, and the jury can take the inferences from those messages. In addition, we have the photos. As the defense counsel said, the photos – I've seen the photos. The jury's seen the photos, and they saw YF in person. I think the relevance of makeup alone, whether she was wearing makeup in the pictures, and I don't know if she was or not at trial, but that really doesn't mean anything because, in my mind, there was no way she passes for 18. That was clear to me. In Mr. Miller's mind, she absolutely could. And so that is why it is a jury question. Because they're the ones who get to decide if that was reasonable to take the defense counsel's argument at trial, that he just couldn't have known when they're entitled to look at her, look at the pictures, in light of all of the other evidence, namely the family's past interactions and the comments that he is having with them in evaluating whether or not it is realistic that he just didn't know that she was 18. And we would submit that it was proven beyond a reasonable doubt, and it was reasonable for the jury to determine that based on all of the evidence presented. So we would ask that this Court affirm on all grounds. Thank you. Thank you, Mr. Ranch. Regarding the sufficiency, we would agree that a picture could, at some point, convince a reasonable juror, beyond a reasonable doubt, that a person is a minor. But that's not here. Like, for example, if this were a picture that she appeared to be 12 or something, and that's just not the case here. Regarding YF's age, the forensic interview, YF herself stated that she believed that Mr. Barrios did not know her age. So that's something to consider. And just briefly, the government mentioned that this Court stated only one time about the trauma. But, again, the government was the one that actually argued that the difference between 30 years and life is the trauma. And that's exactly what happened here. It's the government's own words. What trauma was it referring to, going back to Judge Kelly's question? Was it the testimony? It's the trauma of, basically, the defendant opting to go to trial, forcing the minor to testify. Thank you. Thank you, Mr. Miller.